IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


USF INSURANCE COMPANY,

       Plaintiff,

v.                                 Civil Action No. 5:09CV110
                                              (STAMP)
ORION DEVELOPMENT RA XXX, LLC
and ORION DEVELOPMENT COMPANY,

       Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

      On March 24, 2009, Jane Doe filed a complaint against Orion
Development RA XXX, LLC and Orion Development Company (cumulatively
"Orion") in the Court of Common Pleas of Lawrence County,
Pennsylvania ("underlying lawsuit").[1]   The underlying lawsuit
alleges that from October 31, 2004 to April 30, 2005, Jerry Valecko
("Valecko"), a foreman in connection with a Rite Aid construction
project, sexually assaulted three minors at the construction site
in Lawrence County, Pennsylvania.  Further, the underlying lawsuit
alleges that Orion owned the premises at the time of the alleged
sexual assaults and that Valecko was a "special employee" of Orion.
(Compl. Ex. A at ¶ 23.)

---

     [1]Civil Action No. 10479-09, styled Jane Doe, as legal guardian
of John Doe No. 1, John Doe No. 2, and John Doe No. 3 v. Eckerd
Corp., J.C. Penney Co., Thrift Drug, Inc., Rite-Aid Corp., Orion
Dev. RA XXX, LLC, Orion Dev. Co., Just-Mark Constr. Co. and Jerry
Valecko.

USF Insurance Company ("USF") initiated this declaratory judgment action on October 9, 2009, seeking confirmation that it does not have any coverage obligations relative to Orion with respect to the underlying lawsuit. According to the plaintiff's complaint: (1) Valecko was not an employee or a "special employee" of Orion; (2) Valecko was not in the course and scope of any employment with Orion at the time of the alleged sexual assaults; (3) Orion did not have any control or supervision over Valecko at the time of the alleged sexual assaults; (4) Valecko was not an "insured" under Orion's commercial general liability insurance policy issued by USF ("Policy");[2] (5) the claims set forth in the underlying lawsuit do not establish an "occurrence" under the Policy; (6) the alleged damages set forth in the underlying lawsuit do not establish "bodily injury" under the policy; (7) the Policy excludes coverage for the claims for punitive or exemplary damages set forth in the underlying lawsuit; and (8) USF does not have a duty to defend or indemnify Orion in the underlying lawsuit. (Compl. ¶¶ 26-34.)

On August 30, 2010, both parties filed motions for summary judgment. The plaintiff's motion argues that the Policy does not provide coverage for intentional conduct, non-bodily injury, or punitive damages; therefore, USF has no duty to defend or indemnify Orion with respect to the underlying lawsuit. More specifically,

---

[2]Policy PRB12179, effective from October 31, 2004 to April 30, 2005. (Compl. ¶ 17.)

USF contends: (1) because the underlying lawsuit relates to sexual misconduct, which is inherently non-accidental in nature, the underlying lawsuit does not allege an "occurrence" for the purposes of a commercial general liability insurance policy; (2) the underlying lawsuit alleges intentional conduct on the part of Orion; (3) the underlying lawsuit does not allege "bodily injury" under the Policy; and (4) the Policy does not provide coverage for any award of punitive damages in connection with the underlying lawsuit.

The defendants' motion for summary judgment requests that this Court enter an order declaring that USF does have a duty to provide the defendants coverage for both the defense of, and indemnification for, the claims in the underlying lawsuit. In support of their motion, the defendants argue the following: (1) the underlying lawsuit alleges an "occurrence" so as to trigger coverage; (2) the underlying lawsuit alleges "bodily injury" so as to trigger coverage; and (3) the expected or intended injury exclusion does not apply.

On September 16, 2010, both parties filed responses to the cross motions for summary judgment. The plaintiff's response countered that: (1) West Virginia courts have applied the rationale of Smith v. Animal Urgent Care, 542 S.E.2d 827 (W. Va. 2000), in finding no "occurrence" in cases alleging a failure to prevent the sexual molestation of minors; (2) the allegations of the underlying lawsuit trigger the "expected or intended injury" exclusion; and

(3) the underlying lawsuit does not allege "bodily injury" under the Policy because allegations of post-traumatic stress disorder ("PTSD"), nightmares, and other emotional distress injuries do not satisfy the definition of "bodily injury." The defendants' response reasserts the arguments in their motion to dismiss and further argues that the plaintiff's reliance on <u>Animal Urgent Care</u> is misplaced because it ignores more recent West Virginia precedent, which requires courts to give deference to the standpoint of the insured when making liability coverage determinations.

Finally, both parties filed replies on September 28, 2010 reiterating their previous arguments. The plaintiff's reply also emphasizes that Orion has acknowledged that USF does not have a duty to provide coverage for any award of punitive damages in the underlying lawsuit. This Court held oral argument on the cross motions for summary judgment on October 12, 2010.[3]

## II. <u>Facts</u>

The complaint in the underlying lawsuit consists of five counts. However, only two of those five counts are directed towards Orion, both of which sound in negligence. Count IV of the complaint alleges that the sexual assault and resulting injuries suffered by the John Doe plaintiffs were caused or contributed to

---

[3]During oral argument on the cross motions for summary judgment, the undersigned judge indicated that the Court considers this case submitted on the briefs, and counsel confirmed that they had nothing further to submit. (Oral Argument Hr'g Tr. 36-37, Oct. 12, 2010.)

4

by "the negligence, carelessness, recklessness and other liability-producing conduct of Defendants Orion and/or RITE AID." (Compl. Ex. A ¶ 74.) Specifically, the complaint alleges that Orion, as the owner of the premises, was negligent in failing to prevent Valecko from exploiting the plaintiffs. Count V alleges that because the wrongful acts of Valecko occurred on premises owned or in the possession of Orion and/or Rite Aid, such entities knew or should have known that they had the responsibility to exercise control over Valecko. (Compl. Ex. A ¶¶ 80-84.) As a result of Valecko's abusive actions, the plaintiffs claim to have sustained severe physical and psychological injuries. (Compl. Ex. A ¶¶ 53-55.) In addition to compensatory damages, the underlying complaint also sets forth a claim for punitive damages. The underlying lawsuit is still pending against Orion in Pennsylvania.

This Court has reviewed the parties' pleadings and the relevant law and believes that a decision on the merits on each of the motions for summary judgment is warranted.[4] For the reasons that follow, this Court grants the plaintiff's motion for summary judgment and denies the defendants' motion for summary judgment.

---

[4]This Court applies West Virginia law to the interpretation of the Policy in this declaratory judgment action pursuant to the West Virginia choice of law principles as articulated by the courts in Energy Corp. of America v. Bituminous Cas. Corp., 543 F. Supp. 2d 536, 543 (S.D. W. Va. 2008), and Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 583-85 (W. Va. 1990).

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.

1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950)))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

In this diversity action, state law controls the Court's construction of the insurance policy. <u>In re Nantahala Village, Inc.</u>, 976 F.2d 876, 880-81 (4th Cir. 1992) ("A federal court sitting in diversity must apply the forum state's choice-of-law rules."). "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are

reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." <u>Aetna Cas. & Sur. Co. v. Pitrolo</u>, 342 S.E.2d 156, 160 (W. Va. 1986). In making this determination, the Court need not adjudicate the underlying facts. <u>West Virginia Fire & Cas. Co. v. Stanley</u>, 602 S.E.2d 483, 490 (W. Va. 2004). Significantly, "an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." <u>State Auto. Mut. Ins. Co. v. Alpha Eng'g Services Inc.</u>, 542 S.E.2d 876, 879 (W. Va. 2000). It is likewise established that "an insurer's duty to defend is broader than its duty to indemnify. Where a policy of insurance contains a duty to defend, West Virginia law ordinarily imposes a duty upon an insurer to defend its insured even where some claims may not be covered by the terms of the policy." <u>Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire and Marine Ins. Co.</u>, 682 S.E.2d 566, 575 (W. Va. 2009). This Court focuses on the allegations of the underlying complaint in determining whether USF has a duty to defend or indemnify the defendants in the underlying lawsuit.

A. <u>Bodily Injury</u>

The insuring clause for the bodily injury and property damage liability portion of the Policy states:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.  Insuring Agreement**
a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance

applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .
b.  This insurance applies to "bodily injury" and "property damage" only if:
    (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
    (2)  The "bodily injury" or "property damage" occurs during the policy period.
c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

(Def.'s Mot. Summ. J. Ex. B at 1.)  The Policy's insuring agreement requires that USF defend any action seeking damages for "bodily injury."  But according to the plaintiff, the allegations of the underlying lawsuit involve purported damages that fail to satisfy the definition of "bodily injury" under the Policy because they relate to purely emotional and non-physical injuries.  The plaintiff acknowledges that the underlying lawsuit contains allegations of physical contact, but argues that the case law makes it clear that mere physical contact does not necessarily amount to physical injury for the purposes of bodily injury liability coverage.

In support of this argument, the plaintiff relies heavily on the decision of the Supreme Court of Appeals of West Virginia in Animal Urgent Care, in which the court held that allegations of purely emotional injuries are excluded from the category of "bodily injury" for liability insurance purposes.  542 S.E.2d at 668

(relying on the rationale set forth in <u>Citizens Ins. Co. v.</u> <u>Leiendecker</u>, 962 S.W.2d 446 (Mo. Ct. App. 1998)). <u>Animal Urgent</u> <u>Care</u> arose out of a civil sexual harassment lawsuit filed by the plaintiff, a former employee of Animal Urgent Care, against both Animal Urgent Care and one of its veterinarians. The former employee's complaint alleged that during the period that she and the veterinarian both worked at Animal Urgent Care, the veterinarian engaged in various acts for the purpose of harassing, degrading, and embarrassing her through unwelcome sexual advances and exploitation. <u>Animal Urgent Care</u>, 542 S.E.2d at 827. The insurer of Animal Urgent Care filed a declaratory judgment action seeking a determination that it was not obligated under a commercial general liability policy to provide either a defense or indemnification. The <u>Animal Urgent Care</u> court held that "purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation does not fall within a definition of 'bodily injury' which is limited to 'bodily injury, sickness, or disease.'" 542 S.E.2d at 831.

In discussing the rationale for excluding purely emotional injuries from the category of bodily injury, the court explained that "in insurance law 'bodily injury' is considered to be a narrower concept than 'personal injury' which covers mental or emotional injury." <u>Id.</u> (quoting <u>Leiendecker</u>, 962 S.W.2d at 453). The <u>Animal Urgent Care</u> court stated:

> It is well settled in insurance law that "bodily injury"
> and "personal injury" are not synonyms and that these

10

phrases have two distinct definitions. The term "personal injury" is broader and includes not only physical injury but also any affront or assault to the reputation or sensibilities of a person. "Bodily injury," by comparison, is a narrow term and encompasses only physical injuries to the body and the consequences thereof.

Id.

The Supreme Court of Appeals of West Virginia further extended the holding of Animal Urgent Care in Tackett v. American Motorists Ins. Co., 584 S.E.2d 158 (W. Va. 2003). In Tackett, the court held that the bodily injury portion of the insurance policy did not afford coverage because the complaint did not contain averments that bodily injury resulted from Mr. Tackett's sexual conduct. 584 S.E.2d at 166. Instead, the complaint only alleged that Miss L. sustained "great embarrassment, consternation, mental pain and anguish, and emotional upset." Id. The plaintiff compares the allegations at issue in Animal Urgent Care and Tackett to the allegations of the underlying lawsuit in this case.

The defendants contend that the underlying lawsuit does, in fact, allege bodily injury so as to trigger coverage under the Policy. Distinguishing Animal Urgent Care from the case at hand, the defendants argue that the underlying complaint against Orion is not "devoid of all allegations that [the plaintiffs] suffered any physical symptoms as a result of the alleged harassment." Animal Urgent Care, 542 S.E.2d at n. 11. Rather, the defendants submit that the plaintiffs did suffer injuries as a result of the sexual molestation that manifested themselves physically. Specifically,

the underlying complaint alleges that the plaintiffs experienced physical distress, depression, and PTSD. Emphasizing that the Policy defines bodily injury as: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," the defendants contend that these injuries are forms of illness or disease. Although "sickness" and "disease" are not defined within the Policy, the defendants argue that these terms should be given their plain, ordinary meaning. The plain and ordinary meaning of the words "sickness" and "disease" would arguably include at least some of the plaintiff's alleged injuries in the underlying complaint, meaning that these injuries fall within the Policy's definition of "bodily injury."

The underlying lawsuit in this case alleges a long list of emotional and psychological damages, including humiliation, mental stress, and PTSD. However, this Court finds that none of the damage claims relate to a physical manifestation of any bodily injury arising out of Valecko's sexual misconduct so as to satisfy the definition of "bodily injury" under the Policy. This Court's finding aligns with that of a majority of courts: absent some physical manifestation or physical contact, purely emotional distress allegations are insufficient to qualify as bodily injury. Animal Urgent Care, 542 S.E.2d at 830-31 (listing cases); Tackett, 584 S.E.2d at 166. This Court acknowledges that the underlying lawsuit contains allegations of unwanted physical contact, but these allegations are not tantamount to physical injury. Because

the plaintiffs in the underlying lawsuit have not averred that they suffered any type of injury, sickness, or disease other than emotional upset, humiliation, anguish, and the like, this Court finds that no claim has been stated under the bodily injury coverage provisions of the Policy. See id.

B.    Occurrence

In addition to arguing that the defendants failed to allege bodily injury so as to trigger coverage under the Policy, the plaintiff contends that because the underlying lawsuit relates to sexual misconduct and is inherently non-accidental in nature, the underlying lawsuit does not allege an "occurrence" for the purposes of a commercial general liability policy under West Virginia law. Although the issue of USF's duty to defend or indemnify the defendants with respect to the underlying lawsuit can be decided on the "bodily injury" provision alone, this Court finds that a discussion of whether or not the allegations of the underlying lawsuit establish an "occurrence" is necessary.

Whether the sexual misconduct of Valecko alleged in the underlying lawsuit constitutes an "occurrence" for the purposes of the Policy is a close question. An occurrence is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl. Ex. B at 12.) The Supreme Court of Appeals of West Virginia has elaborated that, for an event to be an accident, "both the means and the result must be unforeseen, involuntary, unexpected, and

unusual." <u>Stanley</u>, 602 S.E.2d at 492 (citing <u>State Bancorp, Inc. v. United States Fid. and Guar. Ins. Co.</u>, 483 S.E.2d 228, 234 (W. Va. 1997)). In reviewing the case law, this Court notes that the answer to this question hinges upon the specific facts of the case.[5] Although the underlying lawsuit relates to sexual misconduct, the particular facts of this case do not warrant a conclusion that Orion engaged in intentional conduct. Rather, the allegations of the underlying lawsuit ring as negligence claims that qualify as an accidental "occurrence" from the standpoint of the insured.[6]

In support of its argument that Valecko's actions do not establish an "occurrence," USF again relies on <u>Smith v. Animal Urgent Care</u>, in which the court concluded that a claim based on sexual harassment did not fall within the definition of "occurrence" under an insurance liability policy. In affirming

---

[5]In <u>State Auto. Prop. and Cas. Ins. Co. v. Edgewater Estates, Inc.</u>, the court noted the conflicting reasoning and holdings of various courts that have addressed the question of what constitutes an "occurrence." No. 2:09-0346, 2010 WL 1780253, *4 (S.D. W. Va. April 29, 2010) (comparing <u>Columbia Cas. Co. Westfield Inc. Co.</u>, 617 S.E.2d 797 (W. Va. 2005) with <u>Smith v. Animal Urgent Care</u>, 542 S.E.2d 827 (W. Va. 2000)). In making its decision, the <u>Edgewater</u> court likened the facts of that case to those of <u>Animal Urgent Care</u>. Like the court in <u>Edgewater</u>, this Court also compares fact patterns to determine whether or not the underlying allegations establish an occurrence.

[6]The plaintiffs in the underlying lawsuit allege that the defendants negligently "permitt[ed] Valecko to engage in unlawful, improper, offensive, and sexual contact with Plaintiffs." (Compl. Ex. A ¶ 74(e).) Although the plaintiffs attempt to imply intentional conduct on the part of the defendants, at heart, these are negligence claims.

14

the trial court's determination that the insurer was entitled to summary judgment in its favor, the Supreme Court of Appeals of West Virginia found that a claim based on sexual harassment does not come within the definition of "occurrence." The court explained that "[s]exual harassment, and its inherently non-accidental nature, remain the crux of the case regardless of whether negligence is alleged against Animal Care." Animal Urgent Care, 542 S.E.2d at 832. The court also emphasized that "sexual harassment" falls within the broader category of "sexual misconduct" and thus relied on West Virginia case law identifying sexual misconduct as a volitional act in reaching its conclusion that no "occurrence" was established. Id.

In response, the defendants direct the Court's attention to the more recent case of J.H. v. West Virginia Div. of Rehab. Services, 680 S.E.2d 392 (W. Va. 2009), in which the court found that sexual molestation of a resident by another resident was an "occurrence" from the standpoint of the insured residential rehabilitation facility that housed both individuals. In J.H., a resident of a state rehabilitation center filed a negligence action against the Division of Rehabilitation Services ("DRS") after he was allegedly sexually molested by another resident. To determine whether under a liability insurance policy an occurrence was or was not an "accident," the court stated that "primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at

issue." J.H., 680 S.E.2d at 400 (quoting Westfield, 617 S.E.2d at 797). In reviewing the allegations from the standpoint of the insured, the J.H. court held that "it is undeniable that from the viewpoint of the insured . . . the alleged molestation . . . was not expected or intended by [the insured]." Id. at 401. As such, the J.H. court concluded that the alleged conduct forming the basis for the underlying action fell within the policy's definition of "occurrence."

Similarly, in Westfield, the Supreme Court of Appeals of West Virginia held that the suicide deaths of inmates were accidents, and thus constituted "occurrences" under the policy language of the liability insurance policy issued to the county commission. Westfield, 617 S.E.2d at 801. The court stated that from the standpoint of the county commission, the suicide of a jail inmate "can be reasonably seen as an accident, if the commission did not have a desire, plan, expectation, or intent that the death would occur." Id. at 799. But see State Bancorp, Inc. v. United States Fid. & Guar. Ins. Co., 483 S.E.2d 228, 235-36 (W. Va. 1997) ("[T]he definition of an 'occurrence' does not include actions which are intended by the insured.").

After careful review of the pleadings, this Court finds that the facts in this case are comparable to those in J.H. Thus, this Court finds that the alleged conduct in the underlying lawsuit constitutes an "occurrence." The defendants highlighted many of the similarities between this case and J.H. in their response to

the plaintiff's motion for summary judgment, including: (1) the insured in J.H. and Orion both owned the property upon which the sexual misconduct took place; (2) like the plaintiff in J.H., the plaintiffs in the underlying lawsuit directed two counts against Orion, both sounding in negligence; and (3) like the allegations in J.H., the allegations in the underlying lawsuit against Orion are based on Orion's negligent failure to prevent the sexual assault. (Compl. ¶ 74.)

Following the precedent set forth in Westfield and J.H., this Court makes its determination of whether the alleged conduct in the underlying lawsuit constitutes an "occurrence" by examining the conduct from the standpoint of the insured, Orion. When viewed through the eyes of Orion, the allegations, which focus on the negligent conduct of Orion rather than alleging intentional conduct, suggest that the sexual molestation was accidental rather than intentional. This Court sees no intent in the cases interpreting and applying general liability coverage to deny liability coverage simply because an insured was allegedly negligent but did not (actually or constructively) intend to cause a specific injury. See J.H., 680 S.E.2d at 401. Like the inmates' deaths in Westfield, the sexual molestation of the John Doe plaintiffs was not deliberate, intentional, expected, desired or foreseen by Orion, and as such, the sexual abuse was an accident. See Westfield, 617 S.E.2d at 801. Consequently, the allegations in

the underlying lawsuit fit the Policy's definition of an "occurrence."

The case relied upon by USF, <u>Animal Urgent Care</u>, is further distinguishable because unlike Orion in the present case, Animal Urgent Care was the employer of the alleged wrongdoer; therefore, Animal Urgent Care had a greater degree of control. In the case before this Court, Valecko's relationship to the defendants at the time the sexual misconduct occurred is unclear.[7] Even if Valecko was employed by Orion, Orion's involvement in the situation giving rise to the underlying lawsuit is farther removed than the direct employer/employee relationship of Animal Urgent Care and the alleged wrongdoer. Moreover, <u>Animal Urgent Care</u> can be characterized as a sexual harassment case resulting from the direct, intentional acts of an employee of the defendant. The allegations in the underlying complaint in this case, however, paint a much different picture of a property owner who is unaware of the acts of a third party on the premises.

While the Court finds that the allegations of the underlying lawsuit constitute an "occurrence," this determination does not impact the holding that the plaintiff has no duty to defend or indemnify the defendants with respect to the underlying lawsuit because the purported damages fail to satisfy the definition of "bodily injury" under the Policy.

---

[7]This Court focuses on the allegations of the underlying complaint, which claim that Valecko was a special employee of Orion. <u>See</u> <u>Edgewater</u>, No. 2:09-0346, 2010 WL 1780253, at *3.

C.  Expected or Intended Injury Exclusion

The exclusions of the Policy provide the following, in pertinent part:

**2.  Exclusions**

This insurance does not apply to:
**a.  Expected Or Intended Injury**
'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured.  This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

(Compl. Ex. B at 1.)  In its motion for summary judgment, the plaintiff argues that because the underlying lawsuit alleges that the defendants engaged in intentional conduct through a "failure to investigate" and a "failure to take action," the expected or intended injury exclusion is triggered.  Again, the plaintiff relies on <u>Animal Urgent Care</u>, comparing it to the allegations in this case: the defendants knew or should have known of Valecko's history of sexual assault, but failed to take any action.  The underlying lawsuit alleges that the defendants engaged in "wanton, wilful, and reckless" conduct, which imports a meaning of intentional conduct on the part of the actor "of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."  <u>Stanley</u>, 602 S.E.2d at 497.

The defendants counter that because Orion did not intend or expect the injury sustained by the three minor plaintiffs, the expected or intended injury exclusion does not operate to enable

19

USF to avoid coverage. The defendants rely on the opinion of the West Virginia Supreme Court in <u>Farmers and Mechanics Mut. Ins. Co. of West Virginia v. Cook</u>, which held that "under an intentional acts exclusion, a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting injury or damage." 557 S.E.2d 801, 807 (W. Va. 2001). Further, the <u>Cook</u> court held that "[w]hen an intentional acts exclusion uses language to the effect that insurance coverage is voided when the loss was 'expected or intended by the insured,' courts must use a subjective rather than objective standard for determining the policyholder's intent." <u>Id.</u>

Because this Court finds that the allegations of the underlying lawsuit do constitute an "occurrence," which is defined as an accident, the expected or intended injury exclusion cannot apply. The establishment of an occurrence eliminates the applicability of the expected or intended injury exclusion because Orion could not have intended or expected any injury deemed to be accidental.

D.  <u>Punitive Damages</u>

The underlying lawsuit seeks both compensatory and punitive damages against the defendants; however, the Policy contains a punitive or exemplary damages exclusion that provides: "In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to punitive or exemplary damages, fines or penalties." (Compl. Ex. B.) The plaintiff contends that it does not have a duty to provide coverage for

punitive damages pursuant to the plain language of the Policy, and the defendants did not contest this position in their pleadings. This Court agrees that to the extent that the underlying lawsuit results in an award of punitive damages against the defendants, USF does not have a duty to provide coverage.

## V. <u>Conclusion</u>

For the foregoing reasons, this Court concludes that USF Insurance Company is entitled to summary judgment. Accordingly, this Court grants the relief sought in the complaint for declaratory judgment. Specifically:

(a) USF does not have a duty to defend Orion Development RA XXX, LLC in the underlying lawsuit filed in the Court of Common Pleas of Lawrence County, Pennsylvania at Case No. 10479-09.

(b) USF does not have a duty to indemnify Orion Development RA XXX, LLC for any award, settlement, verdict or judgment in the underlying lawsuit filed in the Court of Common Pleas of Lawrence County, Pennsylvania at Case No. 10479-09.

(c) USF does not have a duty to defend Orion Development Company in the underlying lawsuit filed in the Court of Common Pleas of Lawrence County, Pennsylvania at Case No. 10479-09.

(d) USF does not have a duty to defend Orion Development Company for any award, settlement, verdict or judgment in

the underlying lawsuit filed in the Court of Common Pleas of Lawrence County, Pennsylvania at Case No. 10479-09.

The Court hereby GRANTS the plaintiff's motion for summary judgment and DENIES the defendants' motion for summary judgment. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     November 18, 2010


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE